JEFFREY F. KELLER (SBN 148005)
jfkeller@kellergrover.com
CAREY G. BEEN (SBN 240996)
cbeen@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

[Additional attorneys listed below signature line]
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUTARO CLINE, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COINTERRA, INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR**<br><br>(1) Breach of Contract<br>(2) Violations of Unfair Business Practices Act<br>(3) Violation of False Advertising Law<br><br>**JURY TRIAL DEMANDED** |

Plaintiff LAUTARO CLINE ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, alleges as follows:

1. This is a consumer class action concerning Defendant CoinTerra Inc.'s ("CoinTerra" or "Defendant") failure to deliver Bitcoin mining computer hardware and software, called the "TerraMiner," in conformity with the advertised specifications and by the stated delivery dates, which were critical terms of the purchase.

2. In October 2013, Plaintiff Lautaro Cline purchased a Bitcoin mining machine from Defendant CoinTerra, which promised delivery of a "TerraMiner IV" by early January 2014. In addition, CoinTerra's product specifications indicated that the TerraMiner IV operated at a speed of 2 terahashes per second while consuming only 1,200 watts of power.

3.     CoinTerra instead delivered a machine to Plaintiff in late February 2014 that operated well below the speed advertised and consumed significantly more power than CoinTerra represented, causing Plaintiff to suffer significant lost profits and opportunities.

4.     In September 2013, other CoinTerra customers similarly purchased a smaller version of the TerraMiner—the "TerraMiner II"—which CoinTerra also promised to deliver by January 2014. CoinTerra's product specifications further warranted that the TerraMiner II operated at a speed of 1 terrahash per second.

5.     After encountering design or manufacture problems with the TerraMiner II, CoinTerra altogether abandoned the product it already had sold and promised to deliver to customers and never manufactured a single TerraMiner II. CoinTerra instead offered to deliver to TerraMiner II purchasers a later version of the TerraMiner IV.

6.     Yet, CoinTerra failed to deliver the replacement TerraMiner IV machines to TerraMiner II purchasers until April 2013—well beyond the early January 2014 date promised—causing TerraMiner II customers also to lose significant profits and opportunities, as explained more fully below.

**A. PARTIES, JURISDICTION AND VENUE**

7.     Plaintiff Lautaro Cline is a citizen of the State of California and a resident of Alameda County, California. On October 20, 2013, Plaintiff purchased a TerraMiner IV, a bitcoin mining device manufactured by CoinTerra. Plaintiff paid $6,289.20 ($5,999 for the TerraMiner IV, plus a $290.20 shipping fee).

8.     Upon information and belief, Defendant CoinTerra is a Delaware Corporation, with its principal place of business in Austin, Texas. Defendant is not a citizen of California. CoinTerra sells its Bitcoin mining equipment throughout the United States, including in this District.

9.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one

defendant are citizens of different states.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because CoinTerra transacts business in this District, advertised in this District, and has received substantial revenue and profits from its sales of its Bitcoin mining equipment in this District. Also, a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred in this District and/or CoinTerra is subject to personal jurisdiction in this District.

### B. FACTUAL BACKGROUND

#### Overview of the Bitcoin Market and Mining

11. Bitcoins are a form of electronic currency that were introduced to the public market in early 2009. Unlike traditional money, Bitcoins are not issued from a government or regulated by any central authority.

12. Bitcoins are computer files, stored on a personal computer or entrusted to an online service that can be spent on real or virtual goods and services.[1]

13. Unlike government-backed currencies, Bitcoins are not "issued" by a centralized authority, but rather Bitcoins come into existence when they are "mined" by users.[2]

14. Bitcoin mining is performed by specialized computer hardware and software, such as the TerraMiner II and TerraMiner IV machines at issue in this case.

15. Bitcoin software creates increasingly difficult mathematical problems.[3] A user who wishes to "mine" Bitcoins volunteers their computer's processing power to solve a complicated computer algorithm. In exchange, the user earns Bitcoins.

16. Bitcoin miners create new Bitcoins for themselves by discovering "blocks," which

---

[1] Nicholas A. Plassaras, *Regulating Digital Currencies: Bringing Bitcoin Within the Reach of the IMF*, 14 Chi. J. Int'l L. 377, 384 (2013).

[2] Omri Marian, *Are Cryptocurrencies Super Tax Havens?*, 112 Mich. L. Rev. First Impressions 38, 41 (2013).

[3] *See* Bitcoin Difficulty Graph at http://www.coinwarz.com/difficulty-charts/bitcoin-difficulty-chart (last visited Apr. 24, 2014).

CLASS ACTION COMPLAINT                3

involves mapping an input data set to a desired out data set (the "hash value").[4] Blocks are files containing data regarding Bitcoin transactions that have yet to be recorded in the public ledger.

17. The number of Bitcoins is finite and capped at 21 million. The total Bitcoin supply grows at a pre-set, limited rate, and the fixed reward for solving new blocks decreases with the passage of time.[5]

18. Mining requires a large amount of computer processing power. As more Bitcoins are "mined," the difficulty continues to increase, requiring more and more computing power.[6]

19. Approximately every ten minutes, Bitcoins are awarded to whichever miner is able to compute a number below a certain threshold. However, as time passes, and the mathematical problems that must be solved in order to earn Bitcoins become increasingly difficult, the computing time necessary to mine Bitcoins grows longer unless there is also a corresponding increase in the processing power of the computers used by Bitcoin miners. Thus, for each Bitcoin mining machine, such as the TerraMiner II and TerraMiner IV machines at issue in this case, time is of the essence for miners to maximize their Bitcoin mining machines mining potential and the return on their investment in the machines. Mined Bitcoins are put into circulation and can be exchanged for goods, services, or even government-backed currencies in online exchanges.

---

[4] More specifically, "Bitcoin miners engage in a set of prescribed complex mathematical calculations in order to add 'blocks' to the 'block chain,' which is a transactional database shared by all nodes participating in the bitcoin system. The full block chain contains every transaction ever executed in bitcoin, starting with the very first one which is called the 'genesis block.' This allows determination of the value belonging to each address at any point in time. Miners who succeed in adding a block to the block chain automatically receive a fixed number of bitcoins as a reward for their effort." Denis T. Rice, *The Past And Future of Bitcoins In Worldwide Commerce*, Business Law Today, 2013-NOV Bus. L. Today 1, 1 (2013).
*See also* Wikipedia, Mining ("Mining is the process of adding transaction records to Bitcoin's public ledger of past transactions. This ledger of past transactions is called the block chain as it is a chain of blocks. The block chain serves to confirm transactions to the rest of the network as having taken place. Bitcoin nodes use the block chain to distinguish legitimate Bitcoin transactions from attempts to re-spend coins that have already been spent elsewhere.") https://en.bitcoin.it/wiki/Mining (last visited Apr. 24 2014).

[5] *Id.* ("Because the method for creating new bitcoins is mathematically controlled, the total bitcoin supply grows at a pre-set, limited rate. The fixed reward for solving a new block is currently 25 bitcoins per block, but will decrease to 12.5 bitcoins per block around the year 2017. The number of bitcoins in existence will never exceed 21 million, and bitcoins cannot be devalued through excessive production unless the Bitcoin Network's source code and the underlying protocol for bitcoin issuance are changed.")

[6] *Id.*

CLASS ACTION COMPLAINT                         4

20.     As of the date of filing this Complaint, the current U.S. Dollar value is approximately $496 per Bitcoin.[7]

**CoinTerra's Promises to TerraMiner II and IV Customers**

21.     Defendant CoinTerra holds itself out to the public as a manufacturer of specialized computer equipment designed specifically for the task of mining Bitcoins.  According to CoinTerra's website, it is a "world-class semiconductor engineering company"[8] that "designs and produces best-in-class Bitcoin mining ASIC [application-specific integrated circuit] processors and systems."[9]

22.     The TerraMiner II-1TH/s ("TerraMiner II"), the first generation Bitcoin device from CoinTerra, is a Bitcoin Networked ASIC, which CoinTerra designed, manufactured, marketed, advertised, and sold for the price of US $3,499.00.

23.     At least as early as September 2013, in the product specifications published by CoinTerra on its website, CoinTerra represented to the public that the TerraMiner II was capable at operating at a speed of one terrahash per second ("1TH/s").  *See* **Exhibit A**.[10]  A terrahash is one thousand gigahashes, which is one billion hash per second.

24.     The TerraMiner IV-2TH/s ("TerraMiner IV") also is a Bitcoin ASIC, designed, manufactured, marketed, advertised, and sold by CoinTerra.  The TerraMiner IV at issue in this case was sold for U.S. $5,999.[11]

25.     In the product specifications published its website, CoinTerra represented to the public that the TerraMiner IV was capable at operating at a speed of two terrahashes per second ("2TH/s").

---

[7] *Id.*; *see also* http://bitcoinexchangerate.org/c/USD (last visited Apr. 24, 2014).

[8] *See* CoinTerra website, http://cointerra.com/about/ (last visited Apr. 24, 2014).

[9] *See* CoinTerra website http://cointerra.com/ (last visited Apr. 24, 2014).

[10] CoinTerra press release of September 12, 2013, "CoinTerra Introduces Two Low-Cost Bitcoin ASIC Mining Solutions," https://cointerra.com/cointerra-introduces-two-low-cost-bitcoin-asic-mining-solutions/ (last visited Apr. 24. 2014).

[11] *See* **Exhibit B**, Plaintiff's order receipt for "TerraMiner IV – 2TH/s, Networked ASIC Miner (Early January Batch)."

CLASS ACTION COMPLAINT                              5

26. As early as August 27, 2013, CoinTerra originally represented that the TerraMiner IV would consume between 1,000 and 1,200 nominal watts of power[12] but subsequently raised that assessment to 1,650 nominal watts of power.[13]

27. The operating speed of a mining machine is important because the faster its processing speed, the better its ability to solve new blocks.[14] Power consumption also is important because mining machines consume substantial amounts of energy, and more power consumption means the operator must pay higher electricity costs, which results in a lower profit for the operator.

28. CoinTerra initially represented to the public that it would deliver its first batch of TerraMiner machines to its very first group of purchasers by December 2013.[15] CoinTerra later represented that both the TerraMiner II and TerraMiner IV would be delivered to purchasers by early January 2014.[16]

29. The mining machines at issue here, like other Bitcoin mining equipment, lose

---

[12] *See* CoinTerra press release of August 27, 2013, "Bright Side of the News on CoinTerra's Bitcoin ASIC Machines," http://cointerra.com/bright-side-news-cointerras-bitcoin-asic-machines/ ("Under peak power consumption, one of these TerraMiner boxes should consume between 1 and 1.2 KiloWatts") (last visited Apr. 24, 2014) (**Exhibit C**); *see also* CoinTerra news article published on August 27, 2013, "Anandtech: The Rush to Bitcoin ASICs: Ravi Iyengar launches Cointerra," http://cointerra.com/ananadtech-the-rush-to-bitcoin-ascics-ravi-iyengar-launches-cointerra/ (**Exhibit D**) (last seen Apr. 24, 2014) ("CoinTerra's first high-end product for launch is listed as a 2000 Gigahashes per second Bitcoin minor (or 2 TH/s). . . These would be housed in a 2U air-cooled container, and draw up to 1200W (estimated) for 0.6 W/GH/s").

[13] *See* **Exhibit E**, CoinTerra press release, "UPDATE: Engineering and Production Status" from http://cointerra.com/update-engineering-production-status/ (last visited Apr. 24, 2014).

[14] Rice, *supra* note 4, at 2.

[15] *See* **Exhibit C**, supra, "Bright Side of the News on CoinTerra's Bitcoin ASIC Machines," http://cointerra.com/bright-side-news-cointerras-bitcoin-asic-machines/.

[16] *See* **Exhibit A**, supra, "CoinTerra Introduces Two Low-Cost Bitcoin ASIC Mining Solutions," http://cointerra.com/cointerra-introduces-two-low-cost-bitcoin-asic-mining-solutions/ (last visited Apr. 24. 2014) ("Scheduled for delivery in early January 2014 . . . the new 1TH/s TerraMiner II will retain for $3499"; and "CoinTerra has announced a major price reduction for the Terra Miner IV to an astonishing $5999 for January delivery to customers"); *See* **Exhibit F**, CoinTerra press release of January 20, 2014, "UPDATE: Prototype Testing Completed, Certification and Production this week," http://cointerra.com/update-prototype-testing-completed-certification-production-week (last seen Apr. 24, 2014) ("We expect to begin shipping the initial run of units at the end of this week").

1 value daily, due to the ever-increasing computing power necessary to mine the same amount of
2 Bitcoin and due to the finite number of Bitcoins that will be put into circulation.

3       30. Consequently, the date of delivery of the mining machines, the energy consumption rates, and the speed of computing were one of the most, if not the most, critical terms of the purchase.

### Facts Relating to Plaintiff/Class Representative Lautaro Cline and CoinTerra's Purchase of the TerraMiner IV

      31. On October 20, 2013, Plaintiff Cline ordered the TerraMiner IV from CoinTerra's website. **Exhibit B**. Plaintiff's order confirmation describes the purchased product as the "TerraMiner IV – 2TH/s, Networked ASIC Miner (**Early January Batch**)." *Id.* (emphasis added). Thus, CoinTerra agreed to deliver to Plaintiff by early January 2014 a TerraMiner IV, with an operating speed of 2TH/s and an average power consumption of 1,200 watts.

      32. Plaintiff paid $6,289.20 to CoinTerra through a direct transfer of bank funds. *Id.*; *see also* **Exhibit J.** This amount consisted of $5,999 for the TerraMiner IV, plus a $290.20 shipping fee for UPS Next Day Air delivery. **Exhibit B.**

      33. At the time that Plaintiff completed his online purchase on October 20, 2013, CoinTerra's website did not include any terms and conditions in the order process. Thus, Plaintiff and the Class members did not click on any box or otherwise agree that he had reviewed any terms and conditions before completing his order.

      34. Upon information and belief, CoinTerra later added terms and conditions to the online order process at some date after Plaintiff completed his purchase.

      35. Based on CoinTerra's representations and pursuant to the parties' agreement, Plaintiff reasonably expected delivery in early January 2014, and expected that the device would perform at a minimum of two terrahashes per second.

      36. Plaintiff, however, did not receive any delivery in early January 2014.

      37. Instead, Plaintiff discovered in mid to late January 2014 that the machine that he had already paid for, and that had still not arrived, operated approximately 20% slower, and consumed 20% more power than advertised.

      38. On or about January 25, 2014, CoinTerra posted an article on its website, stating

that instead of 2.0TH/s, the TerraMiner IV machines operated "at between 1.63TH/s and 1.72TH/s with power draw at the wall between 1900W and 2100W – typically 20% higher than our anticipated target of 1650W." **Exhibit E**.[17]

39.     A few days later, on or about January 28, 2014, CoinTerra posted another press release on its website, stating that in consideration of the "power efficiency issues" CoinTerra was offering its January and February batch retail customers (who had placed orders at the cointerra.com website) two options. **Exhibit G**.[18] The first option was a 15% discount coupon redeemable against their next retail hardware order placed at the CoinTerra website store through December 31, 2014. *Id.* The second option was a full refund and 5% discount coupon redeemable against their next retail hardware order placed at the CoinTerra website store. *Id.*

40.     Neither the 15% future purchase coupon, nor a refund with a 5% coupon, which were offered to Plaintiff and Class members well after the promised delivery date of their machines, offered adequate damages compensation to Plaintiff and Class members. Specifically, by January 28, 2014, Plaintiff and Class members had already suffered a significant loss in Bitcoin earnings and profits due to the delay in delivery of their machines because of the ever-increasing difficulty of the mathematical algorithms, increased mining competition, and decreased number of Bitcoins available for mining as time goes on.

41.     On January 29, 2014, Plaintiff submitted a written inquiry to CoinTerra's customer service department asking for the estimated time of arrival for the TerraMiner IV and also expressing that he was dissatisfied with the compensation options offered. **Exhibit H.** Plaintiff wrote that CoinTerra falsely advertised the hashing power and electricity consumption of the TerraMiner IV, and that "[a] 15% discount coupon for -20% hashing power and +20 electricity consumption is *not *fair compensation." *Id.* Plaintiff stated that he preferred an alternative

---

[17] CoinTerra press release of January 25, 2014, "UPDATE: Engineering and Production Status" from http://cointerra.com/update-engineering-production-status/ (last visited Apr. 24, 2014).

[18] CoinTerra press release of January 28, 2014, "UPDATE: Production News and Jan/Feb Batch Customer Offer," from http://cointerra.com/update-production-news-janfeb-batch-customer-offer/ (last visited Apr. 24, 2014).

CLASS ACTION COMPLAINT                                     8

form of compensation, and proposed that that CoinTerra provide him with either (1) a hardware replacement from a later produced batch or (2) exchange when CoinTerra had a PCB (printed circuit board) that actually delivered 2TH/s. *Id.* CoinTerra failed to respond.

42. January 2014 came and went with no delivery of the TerraMiner IV.

43. On February 7, 2014, Plaintiff again contacted CoinTerra's customer service and asked for the estimated shipping time. **Exhibit I**. A CoinTerra representative responded that "Right now, I do not have an exact shipment date for you. We are in the middle of shipping our first batch of boxes now, and once we get finished with that, we should be able to give you a better estimate of when the January units will ship." *Id.* She also sent Plaintiff the link to the January 28, 2014 article in which CoinTerra offered either a 15% discount off a future purchase, or refund and 5% coupon for purchasers of the TerraMiner IV. *Id.*; **Exhibit G**.

44. Plaintiff wrote back to the customer service representative that, as he had expressed in his January communication, CoinTerra's compensation offer was unfair. **Exhibit I**. Plaintiff stated in his message that he had purchased a "2TH/s miner not a 1.5 or 1.7 TH/s" and that the 15% discount off of future purchases had nothing to do with his current order. *Id.*

45. The customer service representative wrote back on February 10th stating that he could ask for a refund. *Id.* Plaintiff responded that a refund was unsatisfactory and that he would like to swap the machine "when you have the bugs iron[ed] out." *Id.* The representative replied that "[w]e do not do machine swaps, sorry," and stated that she would make a note that Plaintiff was unsatisfied with CoinTerra's current offer. *Id.*

**Late Delivery of the TerraMiner IV**

46. On February 24, 2014 – nearly two months after the advertised early January 2014 delivery date, and despite that CoinTerra had promised and Plaintiff had paid for UPS next day delivery – CoinTerra finally shipped Plaintiff's TerraMiner IV. **Exhibit J**.

47. Plaintiff received the shipment on or about February 25, 2014. No printed terms and conditions were delivered with the shipment.

48. The timing of the delivery of the TerraMiner IV by the promised delivery time of early January was of the essence. With each passing day, the Bitcoin algorithms grow more and

CLASS ACTION COMPLAINT 9

more complex due to more individuals attempting to mine Bitcoin, requiring more and more computing power, and the number of Bitcoins remaining to be mined decreases each day. Thus, the delay in delivery caused Plaintiff and the Class members a significant amount of lost profit and opportunities.

### The TerraMiner IV Operated at a Significantly Lower Speed than CoinTerra had Represented

49. In addition to arriving late, the TerraMiner IV only operated at a speed of 1.6TH/s, rather than 2.0TH/s as advertised and represented by CoinTerra in the product specifications.

50. Further, instead of consuming 1,200 (or even 1650) watts of power to operate, the TerraMiner IV actually required 2,100 watts, as reflected on Plaintiff Lautaro's computer while using the device and software and now reflected on CoinTerra's website.[19]

51. Had Plaintiff, or other Class Members, known that the TerraMiner IV would not be delivered by the promised date, they would have paid less than the price they actually paid by purchasing another Bitcoin miner from a different vendor.

### Facts Relating to Putative Class Members Who Purchased the TerraMiner II

52. In or around 2013, CoinTerra offered to sell to consumers the TerraMiner II, advertising that it operated at a speed of 1TH/s according to the product specifications.

53. Upon the sale of the TerraMiner II, CoinTerra promised a specified delivery date of early January 2014.

54. CoinTerra encountered defects in the TerraMiner II, including failure to live up to the operation speed of 1TH/s as represented by CoinTerra in the product specifications. CoinTerra nonetheless continued to advertise the TerraMiner II for sale and in fact made several sales to unknowing customers, but failed to deliver the faulty equipment.

55. In or around January 2014, CoinTerra acknowledged the defects in the TerraMiner II and offered to either (1) refund the purchase price of the TerraMiner II; (2) replace the problematic TerraMiner II with a TerraMiner IV for payment of an additional $1,500 with

---

[19] http://cointerra.com/product/terraminer-iv-2ths-networked-asic-miner-may-batch/ (last visited Apr. 24, 2014).

CLASS ACTION COMPLAINT                 10

immediate shipment; or (3) ship a TerraMiner IV at no additional cost with a shipment date of late March 2014. These two offers were communicated to individuals who purchased a TerraMiner II by telephone.

56. Many TerraMiner II customers opted to accept CoinTerra's offer to replace the TerraMiner II with a new TerraMiner IV, which CoinTerra failed to deliver until early April 2014.

57. Such purchasers later learned that CoinTerra's TerraMiner II was defective because it operated at a speed of .8TH/s rather than 1TH/s as advertised and represented by CoinTerra and that CoinTerra had ceased production of the TerraMiner II, in any event.

58. Had TerraMiner II purchasers known that the TerraMiner II would never have been delivered, because they never were actually manufactured, they would likely have purchased a comparable Bitcoin machine from a different vendor.

59. The failure of CoinTerra to deliver the TerraMiner II altogether, as well as its failure to promptly replace the TerraMiner II with the TerraMiner IV in accordance with its own offer, caused TerraMiner II purchasers to suffer significant lost Bitcoin mining profits and opportunities.

**C. CLASS ACTION ALLEGATIONS**

60. Plaintiff seeks certification of the following "Class" as defined below:

> Class: All residents of the Continental United States who purchased a TerraMiner from CoinTerra, which was advertised to operate at a specified speed, advertised for delivery in "early January 2014," and which was not delivered by January 2014.

Excluded from the Class are:

(1) CoinTerra, its related entities, parent companies, subsidiaries and affiliates, and their respective officers, directors, and employees,

(2) Judge(s) and/or attorneys to whom the Litigation is or will be assigned.

(3) Purchasers of a TerraMiner IV or a TerraMiner II who previously have released their claims against CoinTerra with respect to the issues raised in the Litigation,

(4) Purchasers of a TerraMiner IV or a TerraMiner II who, at the time purchase,

CLASS ACTION COMPLAINT                              11

       expressly agreed to terms and conditions that require mandatory binding arbitration of a dispute with CoinTerra,

(5) Persons who execute and file a timely request for exclusion,

(6) the legal representatives, successors, or assigns of any such excluded person.

61. Plaintiff Cline is a member of the Class in that he purchased and failed to receive a TerraMiner IV by the promised delivery date of early January 2014.

62. This action is proper for class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. The proposed Class is so numerous that individual joinder of all members is impracticable. While the exact number and identities of the Class Members are unknown to Plaintiff at this time, Plaintiff is informed and believes that the class numbers in the hundreds, if not thousands. Members of the Class can be identified through Defendant's records and ascertained by reference to objective criteria.

63. CoinTerra subjected Plaintiff and the respective Class Members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is CoinTerra's standard and undisputed business practice.

64. Common questions of law and fact arise from CoinTerra's conduct described herein. Such questions predominate over any questions affecting only individual Class Members. The myriad questions of law and fact common to the Class include:

    a. whether CoinTerra breached its contract to deliver to Class Members the TerraMiner machines they paid for in accordance with their agreement to do so;

    b. whether CoinTerra engaged in a marketing practice intended to deceive consumers regarding the delivery date, processing speed, and energy consumption of the TerraMiner IV;

    c. whether CoinTerra's marketing practices violate deceptive and unfair trade practices laws;

    d. whether CoinTerra's conduct described herein constitutes consumer fraud;

    e. whether CoinTerra's conduct constitutes fraudulent inducement;

CLASS ACTION COMPLAINT             12

  f. whether CoinTerra must disgorge any and all funds it received as a result of its misconduct;

  g. whether an accounting is appropriate and necessary; and

  h. whether CoinTerra should be enjoined from marketing the other mining machines in a deceptive and uniform manner.

65. Plaintiff will fairly and adequately represent and pursue the interests of Class Members. Plaintiff's counsel are experienced in consumer class action cases. Plaintiff understands the nature of his claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class.

66. A class action is superior to individual actions because individual claims by Class Members are impractical because the costs to pursue individual claims may exceed the value of what any one Class Member has at stake. Further, prosecuting separate actions by or against individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the defendant. The interests of justice will be well served by resolving the common disputes of potential Class Members in one forum.

67. Defendants have acted or failed to act in a manner generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
**Breach of Contact**

68. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

69. Plaintiff brings this cause of action on behalf of himself and the members of the Class.

70. Plaintiff and the Class Members entered into valid and enforceable agreements with CoinTerra pursuant to which CoinTerra was required to deliver the TerraMiner to customers by the specified dates, which operated at the advertised speed and energy consumption rate.

71. Plaintiff and the Class Members performed all of its obligations under their agreements with CoinTerra.

72. CoinTerra was aware of the time-sensitive nature of the delivery date and importance of the processing speed and energy consumption.

73. CoinTerra's failure to deliver the TerraMiner in conformance with by its advertised processing speed, energy consumption rate, and delivery date, is a material breach of the agreement.

74. CoinTerra's failure to meet its advertised specifications and delayed delivery is not due to any fault of Plaintiff or the Class Members.

**SECOND CAUSE OF ACTION**
**Violation of Unfair Business Practices Act**
**(California Business & Professions Code §§ 17200 *et seq*.)**

75. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 67 of this Complaint.

76. Plaintiff brings this cause of action on behalf of himself and the members of the Class.

77. California Business and Professions Code section 17200 prohibits "unfair competition," which means and includes any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

78. For the reasons described above, CoinTerra has engaged in unlawful, unfair, and/or fraudulent business acts or practices in violation of California Business and Professions Code section 17200.

79. CoinTerra's misrepresentations, as set forth herein, constitute an "unlawful" practice because they violate, *inter alia*, California Civil Code sections 1572 (Kinds of fraud), 1573 (Actual fraud), 1709 (Deceit; damages), 1710 (Deceit defined), 1711 (Deceit to defraud public or particular class), 1770 (List of proscribed practices), California Business and Professions Code sections 17200 *et seq*., and the common law.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

80.     CoinTerra's misrepresentations, as set forth herein, constitute "unfair" business practices and acts within the meaning of California Business and Professions Code sections 17200 *et seq.*, in that CoinTerra's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. CoinTerra's violation of consumer protection and unfair competition laws in California and other states resulted in harm to consumers.

81.     There were reasonable alternatives available to CoinTerra to further CoinTerra's legitimate business interests, other than the conduct described herein.

82.     California Business and Professions Code section 17200 also prohibits any "fraudulent business act or practice."

83.     CoinTerra's misrepresentations, as set forth above, were false, misleading, and likely to deceive the public within the meaning of California Business and Professions Code section 17200.

84.     CoinTerra's misrepresentations were made with knowledge of their effect, and to induce Plaintiff and members of the Class to purchase the TerraMiner IV. Plaintiff and members of the Class justifiably relied on upon CoinTerra's knowing misrepresentations when they purchased the TerraMiner IV.

85.     CoinTerra's conduct caused and continues to cause injury to Plaintiff and members of the Class.

86.     The product that Plaintiff and members of the Class paid for has lost value daily, due to the ever-increasing computing power necessary to mine the same amount of Bitcoin and decreasing number of Bitcoins available.

87.     Plaintiff and members of the Class have suffered injury in fact and have lost money as a result of CoinTerra's conduct.

88.     Accordingly, Plaintiff and members of the Class would not have purchased, or would have paid less, for their TerraMiner IVs had it not been for CoinTerra's misrepresentations.

89. CoinTerra has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and members of the Class to judgment and equitable relief against CoinTerra, as set forth in the Prayer for Relief.

90. Additionally, under Business and Professions Code section 17203, Plaintiff and members of the Class seek an order requiring CoinTerra to immediately cease such acts of unlawful, unfair, and fraudulent business practices and require CoinTerra to correct its actions.

### THIRD CAUSE OF ACTION
### Violation of California's False Advertising Law
### (Cal. Bus. & Prof. Code § 17500, *et seq.*)

91. Plaintiff incorporates paragraph numbers 1 through 67 as set forth above as if fully set forth herein and further alleges as follows.

92. CoinTerra made misrepresentations to the public, as set forth above, including misrepresentations relating to the delivery date, the processing power, and the energy consumption level of its TerraMiner IV Bitcoin mining machine and the delivery date and processing power of its TerraMiner II Bitcoin mining machine.

93. Defendants engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the purchase of TerraMiner II and TerraMiner IV bitcoin mining machines, including those machines purchased by Plaintiff and putative Class members.

94. Plaintiff and Class members have suffered injury in fact and lost money or property as result of Defendants' false advertising, including but not limited to receiving equipment of lesser value than they paid and bargained for and receiving equipment on substantially delayed delivery dates rendering the equipment less valuable than the amount they paid and bargained for.

### PRAYER FOR RELIEF

Plaintiff, and on behalf of himself and all others similarly situated, requests the Court enter judgment against CoinTerra, as follows:

  i. Certifying the Class as requested herein;

  ii. Ordering that CoinTerra is financially responsible for notifying all members of the

Class of the alleged misrepresentations of material facts discussed herein;

  iii. Awarding Plaintiff and the members of the Class compensatory damages in an amount according to proof at trial;

  iv. Awarding restitution and disgorgement of CoinTerra's revenues to Plaintiff and members of the Class;

  v. Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining CoinTerra from continuing the unlawful practices as set forth herein, and directing CoinTerra to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by CoinTerra by means of any act or practice declared by this Court to be wrongful;

  vi. Awarding to Plaintiff and the Class punitive damages;

  vii. Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

  viii. Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

  ix. For such other and further relief as the Court deems just and proper.

Dated: April 30, 2014

      /s/ *Jeffrey F. Keller*
      Jeffrey F. Keller, Esq.
      **KELLER GROVER LLP**
      1965 Market Street
      San Francisco, CA 94103
      Tel: (415) 543-1305
      Fax: (415) 543-7861

      Lawrence Allen Caplan*
      lcaplan@lacaplanlaw.com
      **LAWRENCE A. CAPLAN P.A.**
      1375 Gateway Boulevard Suite 39
      Boynton Beach, Florida 33426
      Tel: (561) 988-6009
      Fax: (561) 880-6958

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Edward M. Mullins*
emullins@astidavis.com
Jenelle E. La Chuisa*
lachuisa@astidavis.com
Regan N. Kruse*
rkruse@astidavis.com
**ASTIGARRAGA DAVIS MULLINS AND GROSSMAN P.A.**
1001 Brickell Bay Drive, Ninth Floor
Miami, Florida 33131-2847
Tel: (305) 372-8282
Fax: (305) 372-8202

\* *Pro Hac Vice Forthcoming*
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

95. Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: April 30, 2014

/s/ *Jeffrey F. Keller*
Jeffrey F. Keller, Esq.
**KELLER GROVER LLP**
1965 Market Street
San Francisco, CA 94103
Tel: (415) 543-1305
Fax: (415) 543-7861

Lawrence Allen Caplan*
lcaplan@lacaplanlaw.com
**LAWRENCE A. CAPLAN P.A.**
1375 Gateway Boulevard Suite 39
Boynton Beach, Florida 33426
Tel: (561) 988-6009
Fax: (561) 880-6958

Edward M. Mullins*
emullins@astidavis.com
Jenelle E. La Chuisa*
lachuisa@astidavis.com
Regan N. Kruse*
rkruse@astidavis.com
**ASTIGARRAGA DAVIS MULLINS AND GROSSMAN P.A.**
1001 Brickell Bay Drive, Ninth Floor
Miami, Florida 33131-2847
Tel: (305) 372-8282
Fax: (305) 372-8202

*\* Pro Hac Vice Forthcoming*
*Attorneys for Plaintiff*